UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
APR 21 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-219-GWU

MAE SMITH, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Smith

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Smith

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Smith

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Smith

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Smith

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mae Smith, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of anxiety and dysthymia. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Smith retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 32, "limited" education, and no relevant work experience could perform any jobs if she had no exertional limitations, but would be limited to the performance of simple, repetitive, one or two step tasks and instructions and that did not involve frequent interaction with co-workers or the public. (Tr. 288). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 289).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Smith

The plaintiff alleged disability due to physical problems, which she described as arthritis in her hands and shoulders. (Tr. 274-7). She had been told she had arthritis, but also had been told that her x-rays were normal. (Tr. 275, 279). She was taking an unknown prescription medication. (Tr. 275). Mrs. Smith also described nervousness, depression, and poor sleep, and was receiving treatment from the Cumberland River Comprehensive Care Center (CRCC), where Dr. John Schremly was prescribing medication for sleep. (Tr. 279-80). She also saw a counselor once a month. (Tr. 285).

Medical records submitted to the ALJ were limited.

Although the plaintiff had a total abdominal hysterectomy in July, 2002, and was subsequently treated for urinary tract infections and continued flank pain, x-rays and an ultrasound of the kidneys were essentially normal, and no restrictions were imposed. (Tr. 136-8, 166-7, 173-4, 199-200). A family nurse practitioner examined Mrs. Smith in February, 2003 for complaints of shoulder and lumbosacral pain and joint swelling and noted the plaintiff's belief that she had bursitis and her fear that she might have rheumatoid arthritis. (Tr. 197). The examination showed a full range of motion of all joints, however, despite some cracking and popping of the upper extremities, and her gait was balanced and steady. (Id.). Blood tests for rheumatoid arthritis factor and sedimentation rate were planned, and, although no results are given in the notes, the plaintiff stated at the hearing that they came back negative. (Tr. 197, 287). The practitioner indicated that Mrs. Smith was carrying herself in a

8

Smith

slumped position, and that she admitted she felt better when she carried herself upright. (Tr. 197-8). She was given samples of Arthrotec. No functional restrictions are suggested. At another visit in May, 2003, the plaintiff was diagnosed with a number of problems including an ear infection, dysuria, nausea, dyspepsia, and sinusitis, but nothing was said about musculoskeletal pain. (Tr. 196).

After the administrative hearing, but before the ALJ's decision, the plaintiff submitted an MRI of her thoracic spine and lumbosacral spine which had been obtained by Dr. John Gilbert, a neurosurgeon. It showed mild degenerative disc disease and a "small protrusion" at L1-L2, with no neural compression. (Tr. 244).

A state agency physician who reviewed a portion of the record concluded that the plaintiff did not have a "severe" physical impairment. (Tr. 146). Since the plaintiff did not produce evidence of any functional limitations, this portion of the ALJ's decision is supported by substantial evidence.

From a mental standpoint, Mrs. Smith sought treatment at CRCC beginning in July, 2002, complaining of anxiety and depression due to family problems, financial problems, and "chronic pain." (Tr. 142). On being seen by Dr. Schremly for the first time in August, 2002, Mrs. Smith was given a diagnosis of dysthymia and an anxiety disorder, and given a Global Assessment of Functioning (GAF) score of 55. (Tr. 179, 221-2). In November, the plaintiff reported mild to moderate improvement with a small dose of Elavil, without side effects. (Tr. 216). In March, 2003, it appeared that she had been doing well until she ran out of Elavil, and was

9

Smith

also on other medications including Zyprexa, although it is not entirely clear when they were prescribed. (Tr. 216). Dr. Schremly renewed her medications and substituted Remeron for Paxil because of a lack of free samples of the latter. (Id.). In May, 2003, the plaintiff noted that she had been diagnosed with hypothyroidism and felt a little better taking Synthroid. (Tr. 212). On the last reported visit to Dr. Schremly, in July, 2003, he renewed her Elavil based on her statements that it was helping her "a lot" and she was sleeping much better. (Tr. 243). Other than a reference to Mrs. Smith appearing fatigued, Dr. Schremly did not provide any indication of her functional status.

State agency psychologists reviewed a portion of the record, most recently in January, 2003, and concluded that the plaintiff did not have a "severe" mental impairment. (Tr. 146, 181). The ALJ did accept Dr. Schremly's diagnoses of dysthymia and anxiety, and applied some mental restrictions purely gratuitously, based on the record that was before him. Although a GAF of 55 indicates moderate symptoms per the Diagnostic and Statistical Manual of Mental Disorders, (Fourth Edition-Text Revision), p. 34, this initial score was not updated, and Dr. Schremly reported subsequent improvement.

On appeal, the plaintiff requests a remand under 42 U.S.C. Section 405(g) based on evidence submitted to the Appeals Council, as well as evidence submitted for the first time as an attachment to her brief. The evidence submitted to the Appeals Council consists of office notes from several sources, including Dr. Gilbert,

10

Smith

who saw the plaintiff on April 20, 2004, almost a month after the ALJ's March 25, 2004 decision. Dr. Gilbert reviewed the MRI from the previous month, indicating that it showed "mild degenerative changes," and his physical examination showed a decreased range of motion of the lumbar spine and a positive straight leg raising test on the right. (Tr. 251). He made a number of diagnoses, including "muscle spasm," although the body of the report shows that no spasm was found on examination, and provided medication, but did not list any functional restrictions. (Tr. 251-2). Likewise, office notes from Pioneer Nursing Healthcare from March 15 to August 20, 2004 reflect complaints of joint pain, for which she was being seen by Dr. Gilbert, and treatment for some other conditions such as allergies, abdominal pain and gastritis, but almost no objective findings and no restrictions. (Tr. 257-66). Additional evidence from CRCC includes a somewhat contradictory April, 2004 office note from Dr. Schremly discussing continued improvement on medication, but also a suggestion of a major depressive disorder. (Tr. 247). Finally, the plaintiff attached to her brief a May 13, 2005 psychological evaluation by Robert Spangler showing that Mrs. Smith had a Verbal IQ score of 74, a Performance IQ score of 84, and a Full Scale IQ score of 77, as well as 6th grade reading and 4th grade arithmetic abilities. Docket Entry No. 19. The psychologist diagnosed a moderate to severe major depressive disorder, a moderate anxiety disorder, borderline intelligence, marginal education, and "slow pace." He assessed Mrs. Smith's abilities in most areas as "seriously limited but not precluded" or worse.

11

Smith

The Sixth Circuit has noted that a Section 405(g) remand requires a showing both that the new evidence is material and that there was good cause for failing to submit it at the administrative level. Cline v. Commissioner of Social Security, 96 F.3d 146, 148-9 (6th Cir. 1996). The evidence submitted to the Appeals Council is of questionable materiality since it does not provide any functional limitations beyond those found by the ALJ. Moreover, merely being generated after the administrative decision does not provide the "good cause" required by the statute. Oliver v. Secretary of Health and Human Services, 804 F.2d 964, 966 (6th Cir. 1986). The Spangler evaluation does provide limitations, although not all of them specifically "relate back" to the period before the ALJ's decision. However, the achievement levels and IQ scores presumably do. Nevertheless, the limitation to simple jobs provided in the hypothetical question makes the materiality of the new evidence also dubious.

The decision will be affirmed.

This the ___21___ day of April, 2006.

_G. Wix Unthank_
G. WIX UNTHANK
SENIOR JUDGE